**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DUNCAN FRANK, on behalf of himself and others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) CRAWLEY PETROLEUM CORPORATION, ) ) ) ) Defendant. ) | Case No. CIV-14-1193-R  Removed from Case No. CJ-2014-65 in the District Court of Kingfisher County |

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Crawley Petroleum Corporation ("Crawley") removes the above-captioned case from the District Court of Kingfisher County to the United States District Court for the Western District of Oklahoma. In support of removal, Crawley states:

1. Plaintiff Duncan Frank filed this putative class action against Crawley on September 29, 2014. (Petition [Ex. 1]). Crawley was served with the petition and summons on October 2, 2014. (Transmittal Letter and Summons [Ex. 2]). The undersigned counsel entered their appearance on behalf of Crawley in the state court on October 20, 2014 [Ex. 3], and Crawley filed its answer to Plaintiff's petition [Ex. 4] that same day. No other process, pleadings, or orders have been filed by or served upon Crawley. A copy of the state court docket sheet is attached as Exhibit 5.

2. Federal subject matter jurisdiction is based on the Class Action Fairness Act ("CAFA"). The Court's jurisdiction is established by 28 U.S.C. § 1332(d)(2), and removal was proper under § 1453(b).

3. In this case, Plaintiff alleges that Crawley has failed to pay or underpaid royalties on natural gas production from wells in sixteen counties in which Plaintiff and the putative class members own an interest. (Petition, ¶ 1). Plaintiff asserts claims for breach of contract and breach of fiduciary duty. Among other relief, Plaintiff seeks damages for the allegedly unpaid or underpaid royalties on behalf of himself and the following proposed class:

> All royalty owners of Crawley Petroleum Corp. from Oklahoma wells in Blaine, Caddo, Canadian, Custer, Dewey, Ellis, Garfield, Garvin, Kay, Kingfisher, Logan, Major, Noble, Roger Mills, Woods, and Woodward Counties that have produced gas and/or gas constituents (such as residue gas, natural gas liquids, helium, nitrogen, or condensate) from January 1, 1993 to the time Class Notice is given.
>
> Excluded from the Class are: (1) Office of Natural Resources Revenue f/k/a the Mineral Management Service (Indian tribes and the United States); (2) Defendant, its affiliates, and their employees, officers, and directors; (3) overriding royalty interests; (4) Any NYSE or NASDAQ listed company (and its subsidiaries) engaged in oil and gas exploration, gathering, processing, or marketing; (5) royalty owners to the extent that the lease creating the royalty interest expressly and unambiguously authorized all of the deductions taken by Defendant; and (6) royalty owners who were subjected to the Oklahoma Non-Resident Royalty Interest Withholding Tax for the last two consecutive tax years before suit was filed.

(Petition, ¶ 10).

4. Plaintiff's proposed class includes Crawley royalty owners in wells that Crawley operates, as well as Crawley royalty owners in wells Crawley does not operate but in which Crawley otherwise owns a working interest. Crawley does not have ready-access to the records evidencing Crawley's current royalty owners for wells Crawley does not operate, so Crawley is unable to determine the total number of putative class members at this time. (Affidavit of Jason Garner, ¶ 6 [Ex. 6]). However, there are

approximately 4,000 putative class members with a royalty interest in Crawley-operated wells in the proposed class area.[1]  (Affidavit, ¶ 8).  Therefore, the number of putative class members is greater than 100.  *See* 28 U.S.C. § 1332(d)(5).

5.      Maharger, Inc. is a member of the putative class.  (Affidavit, ¶ 9). Maharger, Inc. is a corporation organized under Texas law with its principal place of business in Houston, Texas.  (Texas Secretary of State Documents [Ex. 7]).  Crawley is a corporation organized under Oklahoma law with its principal place of business in Oklahoma City, Oklahoma.  (Petition, ¶ 6; Affidavit, ¶ 2).  As a result, CAFA's minimal diversity requirement is satisfied.  *See* 28 U.S.C. § 1332(d)(2)(A).

6.      In his petition, Plaintiff alleges Crawley has systemically underpaid royalty to Plaintiff and the putative class members "through improper accounting methods." (Petition, ¶ 1).  Specifically, Plaintiff alleges that Crawley "pays royalty [to Plaintiff and the putative class members] based upon the net revenue [Crawley] receives under its marketing contracts."  (Petition, ¶ 13).  This is improper, according to Plaintiff, because

---

[1] Crawley is only able to estimate the number of putative class members at this juncture, even for wells Crawley operates, in part because of the exclusions from Plaintiff's proposed class definition.  In particular, Crawley contends the fifth exclusion is objectionable.  First, at least with respect to the gas sold from the vast majority of Crawley's operated wells, Crawley denies that it took any deductions from the amount it received for selling the gas before paying royalty.  Second, determining which leases "unambiguously" authorize the alleged deductions at issue is subjective.  Crawley contends the costs incurred by unaffiliated third parties to process the gas after it was sold by Crawley were expressly authorized by many leases in which the royalty clause states that the amount of royalty paid on gas shall "in no event [be] more than one-eighth (1/8) of the actual amount received by the lessee," or words to that effect.  Presumably, Plaintiff has a different view.  In any event, Crawley adjusted for the fifth exclusion by reducing the number of putative class members and amount in controversy by 4.55% in accordance with Crawley's good-faith review of a random sample of leases from the class wells. (Affidavit, ¶¶ 8, 15).

3

Crawley is supposed to pay royalty to all putative class members based on the value of the gas stream after it has been placed in a "marketable condition" (Petition, ¶ 18), and Plaintiff contends gas is not in a marketable condition until the gas stream has been fully processed such that the residue gas can enter an interstate transmission pipeline and any natural gas liquids have been "fractionated into . . . ethane, propane, butane, isobutane, and natural gasoline." (Petition, ¶¶ 30-31).

7.     Plaintiff alleges Crawley has been underpaying royalty to the putative class members by:

     a.     Burdening the royalty interest with (i.e. taking or allowing deductions to be taken for) certain processing costs Plaintiff contends are necessary to place the gas stream in a marketable condition;

     b.     Failing to pay royalty on "drip condensate," which Plaintiff describes as heavy hydrocarbons that condense or fall out of the gas stream in the gathering lines during the gathering process;

     c.     Failing to pay royalty on gas used (presumably as fuel) in gathering and processing; and

     d.     Failing to pay royalty on gas that is lost in or escapes from the gathering lines.

8.     Crawley denies that it failed to pay or underpaid royalty to Plaintiff or the putative class members. Without waiving any of its other defenses,[2] Crawley contends

---

[2] Specifically but without limitation, Crawley does not concede the so-called marketable-product rule applies to all of the putative class members' leases.

4

that gas is in a marketable condition when it is or could be sold to an unaffiliated third-party purchaser, and that Crawley properly calculated and paid royalty accordingly. Specifically, the gas at issue here was marketable at or near the wellhead at the point where the gas stream entered the gathering system.[3]

9. Crawley currently operates or has previously operated over 450 wells in the class area that produce natural gas. The gas production from the vast majority of those wells was sold by Crawley at or near the wellhead to an unaffiliated third-party purchaser at the point where the gas stream entered the gathering system. (Affidavit, ¶ 11). As a result, Crawley does not presently know the specific costs incurred by third parties in processing the gas stream after it was sold by Crawley. (Affidavit, ¶ 11). Nor does Crawley have ready-access to that information for the class wells in which Crawley owns a working interest but is not the operator. (Affidavit, ¶ 11). Thus, Crawley is unable to calculate the full amount in controversy at this juncture. However, Crawley has been able to estimate a discreet subset of the amount in controversy based upon information available to it, and that subset exceeds the $5 million jurisdictional minimum. *See* 28 U.S.C. § 1332(d)(2).

10. Crawley currently markets or has previously marketed gas production from 321 of the Crawley-operated class wells under one of several percentage-of-proceeds

---

[3] This should not be construed as a concession that the issue of whether gas is in a marketable condition is a "common question" for class certification purposes. It is not for a variety of fact-specific reasons particular to each well. *See, e.g., Foster v. Merit Energy Co.*, 289 F.R.D. 653, 657-59 (W.D. Okla. 2012) (emphasizing that need "for [something very close to] a well-by-well evaluation of gas marketing conditions"); *Foster v. Apache Corp.*, 285 F.R.D. 632, 642-43 (W.D. Okla. 2012) (rejecting the plaintiff's view that the point of marketability could be determined on a class-wide basis).

("POP") contracts. Under these POP contracts, the price Crawley receives for selling the gas to an unaffiliated third party is a certain percentage of the proceeds Crawley's purchaser receives when it later resells the processed residue gas and natural gas liquids. (Affidavit, ¶ 12). For the gas marketed under POP contracts, Crawley has information showing (i) the amount of royalty it paid each putative class members with an interest in those wells, and (ii) the percentages of the proceeds attributable to each such interest. (Affidavit, ¶ 12). Based upon this information, Crawley has calculated the amount in controversy exceeds $6,169,876. (Affidavit, ¶¶ 13-15).

11.  This calculation is conservative. Even with respect to the Crawley-operated wells where gas production was marketed on a POP basis, the above calculation does not account for the gas used in kind or lost gas that Plaintiff alleges Crawley failed to pay royalty on. (Affidavit, ¶ 16). Additionally, this calculation does not include the amount in controversy for all class wells Crawley operates, let alone the class wells Crawley does not operate.

12.  In addition to damages for allegedly unpaid and underpaid royalties, Plaintiff also seeks an award of attorney's fees. (Petition, ¶ 54). Attorney's fees in similar cases often range between 20% and 40% of the total class recovery. Although Crawley denies Plaintiff's claims and further denies that Plaintiff is entitled to recover any attorney's fees, the amount of such fees are properly considered in calculating the amount in controversy. Therefore, the amount in controversy is easily greater than $5 million, exclusive of interest and costs.

13. Plaintiff has the burden of proving whether any of CAFA's exceptions apply, *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009), and those exceptions are not jurisdictional. *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 142 (2d Cir. 2013) (following the Seventh and Eighth Circuits on this point). Therefore, the Court has subject matter jurisdiction over this action according to 28 U.S.C. § 1332(d)(2) and removal is proper under 28 U.S.C. § 1453(b).

Respectfully submitted,

*/s/ Robert W. Dace*
Robert W. Dace, OBA #10263
Philip D. Hart, OBA #3942
Patrick L. Stein, OBA #30737

of the firm

MCAFEE & TAFT A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
bob.dace@mcafeetaft.com
philip.hart@mcafeetaft.com
patrick.stein@mcafeetaft.com

**Attorneys for Crawley Petroleum Corporation**

## CERTIFICATE OF MAILING

        Robert W. Dace certifies that, on October 31, 2014, he caused a true copy of the foregoing document to be mailed by U.S. Mail with postage prepaid to:

Rex A. Sharp
Gunderson Sharp, L.L.P.
5301 W. 75th St.
Prairie Village, KS 66208

**Attorney for Plaintiff**

                      */s/ Robert W. Dace*
                      Robert W. Dace

14339291_2